United States Bankruptcy Court
Northern District of Illinois
Eastern Division

| In re: | Case No. 17 B 15830 |
|---|---|
| FRANK VILLASENOR, | Chapter 13 |
| Debtor. | Judge: Hon. Jack B. Schmetterer |

## MEMORANDUM OPINION ON DEBTOR'S AMENDED OBJECTION TO PROOF OF CLAIM FILED BY FAIR DEAL OF ILLINOIS, INC. AS CLAIM NO. 2 [DKT. NO. 37]

This matter comes before the Court on Debtor, Frank Villasenor's ("Debtor"), Amended Objection to Proof of Claim filed by Fair Deal of Illinois, Inc. ("Fair Deal") as Claim No. 2.

For the reasons stated below, Debtor's Objection will be overruled. The following undisputed facts appear from briefs of the parties.

### UNDISPUTED FACTS

1. Debtor owns the property commonly known as 2310 S. California Avenue, Chicago, Illinois 60608, PIN: 16-25-112-059-0000 ("the Property"). (Dkt. No. 37.)
2. Debtor failed to pay the Cook County property taxes levied upon the Property in 2012. (Dkt. No. 37.)
3. Cook County subsequently sold the unpaid 2012 real estate taxes to Fair Deal as part of its "annual sale." (Dkt. No. 37.)
4. Debtor subsequently failed to pay real estate taxes for the subsequent tax years including 2013, 2014, 2015 and 2016. (Dkt. No. 37.)
5. Fair Deal paid these delinquent real estate taxes to Cook County each time they became due. (Dkt. No. 37.)
6. In all, Fair Deal indicates that it has paid the 2012 taxes, the 2013 taxes, the first of two tax installments in 2014, the 2015 taxes, and the first tax installment of 2016 based on their Claim No. 2. (Claim No. 2-1; Dkt. No. 37).

1

7. Neither party has indicated in their pleadings who paid the second installment of the 2014 taxes. (Dkt. No. 44.)

8. Debtor filed his Chapter 13 petition May 22, 2017. (Dkt. No. 37.)

9. Upon commencement of the Chapter 13 case, Fair Deal submitted its Proof of Claim in the amount of $17,768.50 based upon the total of the real estate taxes, interest, penalties and costs accrued through the filing date of the May petition. (Dkt. No. 37.)

10. Neither party disputes that this is the calculation of the claim. (Dkt. Nos. 37 and 44.)

11. Debtor previously filed four Chapter 13 plans in this case, each indicating that Fair Deal's claim is entitled to 12% interest (Dkt. Nos. 7, 20, 26, 34.)

12. Debtor's latest Chapter 13 plan, filed on November 13, 2017, indicates that Fair Deal will receive 0% interest. (Dkt. No. 49.)

13. Both parties agree that the redemption period for the property ended on June 16, 2017, pursuant to Illinois law. (Dkt. No. 44.)

14. On September 6, 2017, Debtor objected to Fair Deal's claim on the sole basis that the proper interest rate for the claim in his Chapter 13 plan should be 0%.

15. Both parties agree that the only issue before the Court is to determine the proper rate of postpetition interest on Fair Deal's claim. (Dkt. Nos. 37 and 44.)

## JURISDICTION AND VENUE

Subject matter jurisdiction lies under 28 U.S.C. § 1334. Subject matter jurisdiction lies under 28 U.S.C. § 1334. The district court may refer cases arising under title 11 to a bankruptcy judge under 28 U.S.C. § 157, and this matter is referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(B).

## FAIR DEAL OF ILLINOIS, INC.'S CLAIM NO. 2

Initially, it is necessary to discuss precisely how both Debtor and Fair Deal of Illinois arrive at the $17,768.50 figure that the parties have agreed represents Fair Deal's total, secured claim value. According to Fair Deal's claim, the $17,768.50 figure represents the total amount paid by them, including fees, interest and penalties, after purchasing real estate taxes on the property known as 2310 S. California Ave, Chicago, IL. (Claim No. 2.) Fair Deal's claim also asserts that the property is worth $40,000.00, a fact which is not in dispute, rendering the entire amount secured. *Id.*

Fair Deal is not seeking any additional postpetition interest or penalty on the amount that it paid to purchase the 2012 taxes, totaling $1,553.03. (Dkt. No. 44.) Fair Deal is also not seeking interest or penalties with regards to its accrued costs and fees, totaling $2,117.52. *Id.* In its Response, Fair Deal waives the right to postpetition interest on this sum of $3,670.55 ($1,553.03 paid for the 2012 taxes and $2,117.52 in costs and fees). *Id.*

Fair Deal is seeking postpetition interest or penalty **only** on the $14,097.95 that it has paid to cover real estate taxes on the Property after 2012. *Id.* Fair Deal paid the 2013 taxes ($3,483.02), the first of two tax installments in 2014 ($1,783.75), the 2015 taxes ($3,846.13), and the first installment of 2016 taxes ($2,151.17). (Claim No. 2.) With the accrued prepetition interest on these payments, Fair Deal has paid $14,097.95 for the tax years after 2012. *Id.* Fair Deal has not indicated that it has paid any other tax installments, including the second installment of 2016 taxes and those coming due in 2017. *Id.*

In the claim, Fair Deal indicated that it was entitled to 24% interest. *Id.* In the most recently amended Chapter 13 plan, the Debtor indicates that Fair Deal is entitled to no interest. (Dkt. No. 49.) The only question before this Court is determining what amount of interest, if any, the $14,097.95 portion of Fair Deal's claim representing real estate taxes paid subsequent to 2012 is entitled to.

## DISCUSSION

Both parties have correctly noted that the treatment of tax liens in bankruptcy are governed by 11 U.S.C. 511(a). That provision of the Bankruptcy Code requires courts to turn to applicable nonbankruptcy law to determine the rate of interest on tax claims. 11 U.S.C. 511(a). For the purposes of section 511(a), the applicable nonbankruptcy law to be applied will be Illinois law. Both parties rely wholly on the Illinois statute. Neither offers evidence on any other subject. A Seventh Circuit Panel recently decided that, pursuant to Illinois law, a tax purchaser held a tax lien. *In re Lamont*, 740 F.3d 397, 408 (7th Cir. 2014). It was also held that in Illinois a tax purchaser stands in the shoes of the county. *Id.* at 406.

The Illinois Property Tax Code is the law that governs the correct interest rate to be paid to a real estate tax purchaser. 35 ILCS 200 *et seq*. However, unlike the Tennessee statute discussed in *State of Tennessee v. Hildebrand (In re Corrin)*, which both Debtor and Fair Deal cite in their pleadings, the Illinois Property Tax Code does not directly address this issue. Thus, a close reading of the relevant Illinois code sections, coupled with the guiding principal from *In re Lamont* that a tax purchaser stands in the shoes of the county, is required to determine the appropriate amount of interest to which Fair Deal of Illinois is entitled in the instant matter.

Three separate provisions of the Illinois Property Tax Code deal with interest rates to applying to real estate tax purchasers and each of these will be addressed in turn.

First, 35 ILCS 200/21-25 states in relevant part that:

Notwithstanding any other provision of law, if a taxpayer owes an arrearage of taxes due to an administrative error, and if the county collector sends a separate bill for that arrearage as provided in Section 14-41, then any part of the arrearage of taxes that remains unpaid on the day after the due date specified on that tax bill shall be deemed delinquent

4

and shall bear interest after that date at the rate of 1 1/2% per month or portion thereof.

35 ILCS 200/21-25. Thus, until the date of a tax sale, real estate tax arrearages may accrue up to 18% per annum in interest pursuant to Illinois law. However, the tax sale in this case occurred well before the initiation of Debtor's bankruptcy proceedings, and any additional interest under this provision would be prepetition interest. In the instant case, both Debtor and Fair Deal agree that no prepetition interest is being sought. Thus, 35 ILCS 200/21-15 does not apply and 18% percent per annum is not the correct interest rate.

Second, 35 ILCS 200/21-355 describes a "penalty" that a tax purchaser may levy upon a delinquent tax payer for the duration of the redemption period, lasting between 30 and 36 months, depending on whether the tax purchaser allows for a six month extension. In relevant part, the statute states that:

> (b) the accrued penalty, computed through the date of redemption as a percentage of the certificate amount, as follows:
> (1) if the redemption occurs on or before the expiration of 6 months from the date of sale, the certificate amount times the penalty bid at sale;
> (2) if the redemption occurs after 6 months from the date of sale, and on or before the expiration of 12 months from the date of sale, the certificate amount times 2 times the penalty bid at sale;
> (3) if the redemption occurs after 12 months from the date of sale and on or before the expiration of 18 months from the date of sale, the certificate amount times 3 times the penalty bid at sale;
> (4) if the redemption occurs after 18 months from the date of sale and on or before the expiration of 24 months from the date of sale, the certificate amount times 4 times the penalty bid at sale;
> (5) if the redemption occurs after 24 months from the date of sale and on or before the expiration of 30 months from the date of sale, the certificate amount times 5 times the penalty bid at sale;
> (6) if the redemption occurs after 30 months from the date of sale and on or before the expiration of 36 months from the date of sale, the certificate amount times 6 times the penalty bid at sale.

5

35 ILCS 200/21-355(b). In Illinois, tax bidding operates differently than in traditional auctions. Tax purchasers participate in a reverse auction wherein participants continue to bid a lower rate of interest, between 18 and 0 percent, and the bid with the lowest interest amount wins. That figure is then plugged into the formula in 35 ILCS 200/21-355(b) to determine what penalty amount is owed to the tax purchaser during any given period of the redemption period.

This provision, however, has no bearing on the instant matter. As Debtor has indicated in Exhibit 1 to his Objection, Fair Deal bid 0% at the annual sale, and thus the formula from 35 ILCS 200/21-355(b) would add no additional cost to the redemption amount. Furthermore, Fair Deal itself concedes that the provision has nothing to do with Claim No. 2, pertaining only to the penalty amount at the original tax sale. (Dkt. No. 44.) Thus, Fair Deal is not entitled to any postpetition interest pursuant to 35 ILCS 200/21-355(b).

The final provision that the parties discuss in their briefs is 35 ILCS 200/21-355(c). In relevant part, that provision states:

> (c) The total of all taxes, special assessments, accrued interest on those taxes and special assessments and costs charged in connection with the payment of those taxes or special assessments, which have been paid by the tax certificate holder on or after the date those taxes or special assessments became delinquent together with 12% penalty on each amount so paid for each year or portion thereof intervening between the date of that payment and the date of redemption . . . The person redeeming shall also pay the amount of interest charged on the subsequent tax or special assessment and paid as a penalty by the tax certificate holder.

6

Case 17-15830   Doc 53   Filed 12/05/17   Entered 12/06/17 06:35:44   Desc Main
Document      Page 7 of 11


35 ILCS 200/21-355(c). The crux of the dispute between Debtor and Fair Deal of Illinois concerns this provision of the Illinois Property Tax Code. Preliminarily, it should be noted that Debtor is correct that Fair Deal is not entitled to 24% interest as it initially suggested in its proof of claim. The plain language of the statute does not indicate, as Fair Deal suggests, that a tax purchaser is entitled to a 12% penalty the first year and also the first year's 12% penalty, plus an additional 12% penalty the second year. The statute clearly states that the penalty amount shall be a "12% penalty… for each year or portion thereof," suggesting that the total penalty is a flat 12% per annum.

Additionally, as Fair Deal points out, the 12% penalty does not end when the redemption period does. The language of the statute clearly states that the 12% penalty *applies* to "each amount so paid for each year or portion thereof intervening between the date of that payment and the date of redemption," but it does not indicate that that the penalty *ends* at end of the redemption period. *Id.* The proper reading of the statute allows for imposition of a 12% penalty on the amounts paid by tax purchasers for subsequent tax years (in this case, the years 2013, the first of two installments in 2014, 2015 and the first of two installments in 2016 based on the information provided in Fair Deal's Claim No. 2-1) after the purchase of the initial taxes (2012), to which the 12% penalty does not apply. *Id.*

Debtor takes great pains in his Objection and Reply to differentiate between the usage of "interest" and "penalty" in the relevant Illinois Property Tax Code sections. Debtor suggests that, as a result of the varying usage and the meticulous drafting of the Illinois legislature, this Court should not conflate its terms in its analysis. Furthermore, Debtor asserts that based upon the opinions from three cases out of the Bankruptcy Court of the Middle District of Tennessee, penalties may not be assessed against a debtor by oversecured claimants. *In re Corrin*, 849 F.3d 653 (6th Cir. 2017); *In re Bratt*, 549 B.R. 462 (B.A.P. 6th Cir. 2016); *In re Gift*, 469 B.R. 800 (Bankr. M.D. Tenn. 2012). Taken together, Debtor argues, any provision directly referencing penalties – in this case 35

ILCS 200/21-355(c) – is wholly inapplicable in bankruptcy and thus, Fair Deal is not entitled to any interest on its claim under this provision of the Illinois Property Tax Code.

However, the cases that Debtor cites do not reach the conclusion for which they are cited. First, cases out of the Middle District of Tennessee do not constitute binding authority upon this Court. The Debtor points to the fact that two Tennessee bankruptcy courts held that 11 U.S.C. § 506(b) contained an exhaustive list of additional costs and fees that oversecured creditors could claim, a list which conspicuously did not include penalties. *In re Gift,* 469 B.R. 800, 810 (Bankr. M.D. Tenn. 2012); 549 B.R. 462, 465 (B.A.P. 6th Cir. 2016). That is not true under Illinois law. In this state it is incumbent upon the Debtor to present evidence that a particular charge or interest rate is an "unenforceable penalty." *In re Schaumburg Hotel Owner Ltd. P'ship,* 97 B.R. 943, 951 (Bankr. N.D. Ill. 1989). In *Schaumburg Hotel,* the debtor challenged a default rate clause in a contract that it had signed setting the interest rate at 19%. *Id.* The opinion held that the debtor presented no evidence that they lacked an opportunity to bargain over the rate, and the rate of interest did not seem to be commercially unreasonable such that it would shock the conscience of the court. *Id.* The opinion detailed several types of evidence that would tend to show that a penalty would be unenforceable including a debtor's lack of opportunity to bargain over a default rate, the default rate falling outside the norms of those typically applied commercially, the creditor's status as oversecured at the time the bankruptcy petition is filed, the creditor's realistic chance of nonpayment before or during the bankruptcy case, and whether the creditor's actual costs were disproportionate with those that were provided for by the default rate. *Id.* While the facts are not completely analogous, Debtor has made no showing here that the penalty in 35 ILCS 200/21-355(c) is "unenforceable," by the standards laid out in *Schaumburg Hotel.* Although the rate of interest in the instant case is set by statute rather than by contract, Debtor here had the opportunity to avoid this rate of postpetition interest – as

8

the court in *Schaumburg Hotel* found that the debtor in that case could have, by bargaining over the default rate provided in the contract with its creditor, specifically by exercising his right of redemption by the end of the redemption period on June 16, 2017. Furthermore, there has been no evidence presented that a 12% rate of interest should shock the conscience of this court. Thus, Debtor has failed to meet the burden of proof necessary to show that the instant penalty should be considered unenforceable.

Moreover, the Tennessee statute discussed in *State of Tennessee v. Hildebrand (In re Corrin)*, *In re Gift* and *In re Bratt* is substantially different from the Illinois statute. 849 F.3d 653 (6th Cir. 2017); 469 B.R. 800, 810 (Bankr. M.D. Tenn. 2012); In re Bratt, 527 B.R. 303, 314 (Bankr. M.D. Tenn. 2015); *see also* In re Bratt, 549 B.R. 462, 469 (B.A.P. 6th Cir. 2016). The Tennessee statute in those cases provided for 12% interest and a 6% penalty for debtors in bankruptcy and the opinions in those cases discussed at length the disparate treatment of debtors in bankruptcy and debtors not in bankruptcy pursuant to the statute. *In re Corrin*, 849 F.3d 653, 658 (6th Cir. 2017); *In re Gift*, 469 B.R. 800, 812 (Bankr. M.D. Tenn. 2012); *In re Bratt*, 527 B.R. 303, 313 (Bankr. M.D. Tenn. 2015). The court in *Bratt* went so far as to rule the statute unconstitutional pursuant to the Supremacy Clause because the Tennessee legislature gave direction to the bankruptcy courts to treat penalties as interest. *Bratt*, 527 B.R. at 313. The Illinois statute involved here does not face this problem: 35 ILCS 200/21-355(c) treats all delinquent tax payers equally, setting forth a 12% penalty and thus, the statute does not direct the decision making of bankruptcy courts. 35 ILCS 200/21-355(c).

Debtor's argument that 35 ILCS 200/21-355(c) does not grant Fair Deal of Illinois 12% interest rests on authority from another district that held that penalties are not allowed in bankruptcy. *In re Corrin*, 849 F.3d 653 (6th Cir. 2017); *In re Bratt*, 549 B.R. 462 (B.A.P. 6th Cir. 2016); *In re Gift*, 469 B.R. 800 (Bankr. M.D. Tenn. 2012); *In re Bratt*, 527 B.R. 303, 313 (Bankr. M.D. Tenn. 2015). Debtor has presented no binding authority that requires this Court to interpret 11 U.S.C. 506(b) in the same manner. Furthermore,

9

Debtor's attempts to analogize an unconstitutional Tennessee state statute that bears no resemblance to the Illinois statute in the instant matter presents a weak argument. Additionally, Debtor has not made a showing that the penalty prescribed by the Illinois statute is an unenforceable one, pursuant to Illinois precedent.

Therefore, Fair Deal is entitled to the 12% penalty rate prescribed by 35 ILCS 200/21-355(c), but only as to a portion of its claim. Specifically, its right is limited to payments made only for the tax years 2013, the first installment of taxes in 2014, 2015 and the first installment of taxes in 2016 based upon the information in Fair Deal's Claim No. 2-1. That is because, pursuant to 35 ILCS 200/21-355(c), the 12% penalty rate does not apply to the 2012 taxes, as it only applies to "each year or portion thereof intervening between the date of that payment and the date of redemption," and it does not compound yearly and is, in fact, a flat 12% per annum rate.

## CONCLUSION

For the foregoing reasons, Debtor's Amended Objection to Claim #2 of Fair Deal of Illinois, Inc. is overruled, and Fair Deal of Illinois is adjudged to be entitled to 12% interest for payments made only during the tax years 2013, the first installment of taxes in 2014, 2015 and the first installment of taxes in 2016, with that rate applicable to each cash payment from the date of payment to the date of redemption.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this ___ day of December, 2017

DEC -5 2017

In re: Frank Villasenor
Case No. 17 BK 15830

## CERTIFICATE OF SERVICE

I, Amartya Bagchi, certify that on December 5, 2017, I caused to be served copies of the foregoing Order to the following by electronic service through the Court's CM/ECF system or regular U.S. mail:

*Amartya Bagchi*
Law Clerk

### Electronic Service through CM/ECF System (17 BK 15830)

Paul M Bach
Bach Law Offices
P.O. Box 1285
Northbrook, IL 60065
847 564-0808
847 564-0985 (fax)
paul@bachoffices.com
Counsel for Fair Deal of Illinois, Inc.

Robert V Schaller
Schaller Law Firm
700 Commerce Drive, Suite 500
Oak Brook, IL 60523
630 655-1233
slfecfmail@gmail.com
Counsel for Debtor, Frank Villasenor